JOHN E. BOTSFORD ET AL. V. CHARLES H. PLUMMER.

[See 67 Mich. 264.]

*Shipping—Principal and agent—Ratification—Evidence.*

1. Where the captain of a vessel, laden with lumber, made an *unauthorized* contract for towage, the vessel having been beached and being in a water-logged condition, which contract was carried out and the cargo delivered to the consignee, who was required to pay one-half of the contract price for towage, in addition to the freight, which the owner of the vessel received in addition to said freight, with full knowledge of the terms of the towage contract, he thereby ratifies said contract.

2. In such a case testimony to show that the voyage was injurious to the vessel is rightly excluded. There was an express bargain for the towage, or there was no claim at all, and there could be no method of getting at the proper measure of risks on the towage of a water-logged vessel and cargo, so long as towed and delivered as agreed.

Error to Saginaw.  (Gage, J.)    Argued July 10, 1889.
Decided October 18, 1889.

*Assumpsit.*    Defendant brings error.    Affirmed.    The
facts are stated in the opinion.

*Tarsney & Weadock,* for appellant.

*Avery Brothers (Albert Trask,* of counsel), for plaintiffs.

CAMPBELL, J.    This case, which as formerly before us
and reported in 67 Mich. 264 (34 N. W. Rep. 569), was
sent back for a new trial on a single question, resulted
in a verdict for plaintiffs, and comes here again on the
dispute concerning ratification.    It will not be necessary,
therefore, to do more than refer very generally to the
nature of the controversy.

In the early part of June, 1884, defendant was owner
of the lumber barge Saginaw, laden with a cargo of lum-
ber consigned to J. H. Morley, of Cleveland, Ohio; and
on June 4 it was lying beached and water-logged at Port
Crescent, in Huron county.    Defendant resided at East
Saginaw.    The boat met with a storm while loading at
that point on May 24, and was water-logged, and was
beached to save her from further danger.    Information
was sent by Mr. Helbing, the captain, to defendant, who
answered by telegraph at once, and by letter on June 1,
refusing to have her sent to Cleveland, as the captain
had suggested, by reason of expense and danger, and
directing him to bring her to Bay City or some other
safe place, if it would be too expensive to leave her where
she was.    Notwithstanding these orders, the captain
undertook to make a bargain with Capt. Hebner, com-
manding the Concord, a steamer belonging to plaintiffs,
to tow the Saginaw to Cleveland, and turn her over to a
harbor tug, for $500.    On June 5 an instrument, some-

times called a "draft," and more correctly a "statement of account,"—a "due-bill,"—was given to Capt. Hebner, as follows:

"$500.                              PORT CRESCENT, June 4, 1884.

"To C. H. PLUMMER, Master, and Cargo of Lumber of the Tow-barge SAGINAW, of East Saginaw,

"To Propeller CITY OF CONCORD,                          Dr.

"For towing from Port Crescent, Mich., to Cleveland, Ohio, five hundred dollars.

"Master: FRANK HEBNER.

"Correct.

"A. J. HELBING, Master.

"(Water-logged, and lying on the shore in an exposed condition.)"

This was sent for settlement or acceptance to a bank in East Saginaw. There was a dispute between Plummer and another witness whether this was or was not presented to him. The jury must have found on this issue for plaintiffs. The person presenting it put on it a memorandum to this effect:

"Refused. Captain will pay from freight money,"—

And, while not able to speak positively from memory, testified substantially that it must have been correct. Mr. Plummer's version is that he was sent for to go to the bank, and there saw Mr. Comstock, to whom he refused to pay the draft as unauthorized; that Helbing had no business to go to Cleveland; and that, among other things, defendant remarked:

"What is he doing with the freight money?"

The vessel was towed to Cleveland, and put in charge of a local tug, as agreed. Before delivering the cargo, Helbing required Mr. Morley to pay not only the freight-bill of $384, but a further sum of $250 for "extra expense on account of water-logging," as expressed in the document signed by Mr. Morley, which declared that of that aggregate sum $68 was retained to pay the tug Jennie

77 MICH.—3.

Sutton, which seemingly was a tug that had rendered services at Port Crescent and Bay City. Capt. Helbing testified that he told Plummer he had received $250, besides the freight, and had used some to pay expenses, and paid about $200 to Plummer, who retained it.

The only question which was properly up for consideration on the new trial was whether Plummer had done enough to ratify the otherwise unauthorized conduct of Capt. Helbing in employing plaintiffs' steamer.

An attempt was made to introduce testimony to show that the voyage was injurious to the Saginaw. But this was rightly held irrelevant. There was an express bargain, or there was no claim at all, and there could be no method of getting at the proper measure of risks on the towage of a water-logged vessel and cargo, so long as towed and delivered as agreed, concerning which no issue was really presented. It was probably an unwise, as it was unauthorized, performance, but the work was done, and, if recognized, must be paid for.

There was also an exception taken to some remarks of the court concerning the rule of division of extra expenses between the vessel and cargo. If Morley was willing to contribute, and did contribute, towards the extra expense, it to that extent relieved defendant, whether it was or was not in strictness a proper case for general average, and what was said was not prejudicial to defendant. It was actually received on that account, as found by the jury, and, as they have also found, Plummer, understanding its purpose, took it and kept it, inasmuch as what was not paid to him in cash was used with his acquiescence in the expenses of the vessel.

The charge of the court upon the only issues properly in the case followed the decision of this Court on the former hearing, and there is no occasion for reviewing it.

There was just such evidence as our former decision intimated would show a ratification. Mr. Plummer, whether he did or did not refer the payment of the account to the freight money, saw the paper, which showed not only the terms of the bargain, but, also, that the Saginaw was water-logged, and exposed to danger. Knowing this, he received from the consignee, in addition to the freight, one-half of this very bill, as the consignee's share. It would be difficult to find a more direct recognition of the whole affair; and it is certain that Morley paid the money as an expenditure called for by the peril as represented to him.

We have nothing to do with the determination of the questions of fact in the matter. We think that there was enough to go to the jury, and that there was testimony which, if believed, could not fail to justify the verdict. The charge was fair and discriminating, and nothing has been pointed out which could legally wrong defendant.

The judgment must be affirmed, with costs.

The other Justices concurred.